No. 16-15576–EE

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

TIMOTHY ANDREWS,

Plaintiff-Appellant

v.

CITY OF HARTFORD, ALABAMA,

Defendant-Appellee
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
_____

BRIEF FOR THE UNITED STATES AND THE EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION AS *AMICI CURIAE* IN SUPPORT OF
PLAINTIFF-APPELLANT AND URGING REVERSAL
_____

JAMES L. LEE
  Deputy General Counsel
JENNIFER S. GOLDSTEIN
  Associate General Counsel
LORRAINE C. DAVIS
  Assistant General Counsel
CHRISTINE J. BACK
  Attorney
  Equal Employment
    Opportunity Commission
  Office of General Counsel
  131 M Street NE, Fifth Floor
  Washington, D.C.  20507
  (202) 663-4733

VANITA GUPTA
  Principal Deputy Assistant
    Attorney General

THOMAS E. CHANDLER
ALEXANDER B. ARONSON
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section - RFK 3730
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 514-0619

No. 16-15576–EE

*Andrews* v. *City of Hartford*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

In accordance with Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, *Amici Curiae* United States and Equal Employment Opportunity Commission certify that, in addition to those listed in the certificate filed by appellant in his Brief of Appellant on December 5, 2016, the following persons may have an interest in the outcome of this case:

1. Aronson, Alexander B., United States Department of Justice, Civil Rights Division, counsel for *amicus curiae* United States;

2. Back, Christine J., Equal Employment Opportunity Commission, counsel for *amicus curiae* Equal Employment Opportunity Commission;

3. Chandler, Thomas E., United States Department of Justice, Civil Rights Division, counsel for *amicus curiae* United States;

4. Davis, Lorraine C., Equal Employment Opportunity Commission, counsel for *amicus curiae* Equal Employment Opportunity Commission;

5. Goldstein, Jennifer S., Equal Employment Opportunity Commission, counsel for *amicus curiae* Equal Employment Opportunity Commission;

6. Gupta, Vanita, United States Department of Justice, Civil Rights Division, counsel for *amicus curiae* United States; and

7.    Lee, James L., Equal Employment Opportunity Commission, counsel for *amicus curiae* Equal Employment Opportunity Commission.

s/ Alexander B. Aronson
ALEXANDER B. ARONSON
Attorney

Date:  December 12, 2016

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT

INTEREST OF THE UNITED STATES AND THE EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION ................................................1

ISSUE PRESENTED ...............................................................................................2

STATEMENT OF THE CASE..................................................................................2

     1.    *Statutory And Regulatory Background* ................................................2

     2.    *Facts And Procedural History* ..............................................................8

SUMMARY OF ARGUMENT ...............................................................................13

ARGUMENT

    ANDREWS'S COMPLAINT ADEQUATELY PLEADS A
    COVERED DISABILITY UNDER EACH OF THE THREE
    PRONGS OF SECTION 12102(1), AS AMENDED BY THE
    ADA AMENDMENTS ACT OF 2008 ........................................................14

        A.    *Andrews's Complaint Adequately Pleads An Actual*
            *Disability Under Section 12102(1)(A)* ......................................14

        B.    *Andrews's Complaint Adequately Pleads A "Record*
            *Of" Disability Under Section 12102(1)(B)* ..............................20

        C.    *Andrews's Complaint Adequately Pleads A "Regarded*
            *As" Disability Under Section 12102(1)(C)* ..............................21

**TABLE OF CONTENTS (continued):**                                    **PAGE**

CONCLUSION .................................................................................................24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

**CASES:**                                                                                   **PAGE**

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009)................................................................9, 20

*Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007).....................................................20

*Collado* v. *United Parcel Serv., Co.*, 419 F.3d 1143 (11th Cir. 2005)............. 11, 19

*Gordon* v. *E.L. Hamm & Assocs., Inc.*, 100 F.3d 907 (11th Cir. 1996) ........... 12, 22

*Hilburn* v. *Murata Elecs. N. Am., Inc.*, 181 F.3d 1220 (11th Cir. 1999).......... 10, 12

*Hilton* v. *Wright*, 673 F.3d 120 (2d Cir. 2012) .......................................................22

*Jordan* v. *City of Union City,* 646 F. App'x 736 (11th Cir. 2016) ........................15

*Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ........................................14

*Kotwica* v. *Rose Packing Co.*, 637 F.3d 744 (7th Cir. 2011) ..................................10

*\*Mazzeo* v. *Color Resolutions Int'l, LLC*,
    746 F.3d 1264 (11th Cir. 2014) ....................................................... 14-16, 19

*Ray* v. *North Am. Stainless, Inc.*, No. 13-46-GFVT,
    2014 WL 1047120 (E.D. Ky. Mar. 18, 2014) ..............................................18

*Sutton* v. *United Air Lines, Inc.*, 527 U.S. 471 (1999).......................................... 3-4

*Tadder* v. *Board of Regents of the Univ. of Wis. Sys.*,
    15 F. Supp. 3d 868 (W.D. Wis. 2014)............................................................17

*Toyota Motor Mfg., Ky., Inc.* v. *Williams*, 534 U.S. 184 (2002) ........................3, 15

*Willoughby* v. *Connecticut Container Corp.*, No. 3:11-CV-00992 (CSH),
    2013 WL 6198210 (D. Conn. Nov. 27, 2013).........................................  17-18

*Wolfe* v. *Postmaster Gen.*, 488 F. App'x 465 (11th Cir. 2012)......................... 22-23

**STATUTES:**                                                                 **PAGE**

Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.*........................................1

      42 U.S.C. 12101(b)(1) ...............................................................2

      *42 U.S.C. 12102(1) ............................................................ 2-3

      42 U.S.C. 12102(1)(A) .........................................................2, 15

      42 U.S.C. 12102(1)(B) .........................................................2, 12

      42 U.S.C. 12102(1)(C) .........................................................2, 21

      *42 U.S.C. 12102(2) .......................................................4-5, 16

      42 U.S.C. 12102(2)(B) ..........................................................16

      *42 U.S.C. 12102(3)(A) .................................................. 5, 21-22

      42 U.S.C. 12102(4)(A) ...........................................................6

      42 U.S.C. 12102(4)(B) ...................................................... 15, 19

      42 U.S.C. 12116............................................................2

      42 U.S.C. 12117(a) ........................................................2

      42 U.S.C. 12134(a) ........................................................2

      42 U.S.C. 12186(b) ........................................................2

      42 U.S.C. 12188(b) ........................................................2

*ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 ..............1, 3

      § 2, 122 Stat. 3553 ........................................................4

      § 2, 122 Stat. 3554 ........................................................5

      § 2(a)(7), 122 Stat. 3553 ................................................15

      § 2(b)(1), 122 Stat. 3554 ..................................................4

      § 2(b)(4), 122 Stat. 3554 .................................................19

      § 2(b)(5), 122 Stat. 3554 .................................................16

      § 2(b)(6), 122 Stat. 3554 ..................................................6

      § 3, 122 Stat. 3555 ........................................................5

      § 3(4)(A), 122 Stat. 3555 ................................................15

Pub. L. No. 101-336, § 3, 104 Stat. 329-330 (1990) ................................2

**REGULATIONS:**

29 C.F.R. 1630 *et seq.*...........................................................6

29 C.F.R. 1630.2(g)(2)....................................................... 2-3, 6

29 C.F.R. 1630.2(j) ..............................................................7

**REGULATIONS (continued):**                                           **PAGE**

*29 C.F.R. 1630.2(j)(1)(i) ........................................................... 6, 16, 19

29 C.F.R. 1630.2(j)(1)(ii) ...............................................................19

29 C.F.R. 1630.2(j)(1)(iv) ................................................................6

*29 C.F.R. 1630.2(j)(3)(ii) ........................................................*passim*

*29 C.F.R. 1630.2(j)(3)(iii) ......................................................... 7, 16-17

*29 C.F.R. 1630.2(k)(2) ............................................................ 7, 20-21

29 C.F.R. 1630.2(*l*)(1) ................................................................7, 21

29 C.F.R. 1630.2(*l*)(2) ...................................................................8

56 Fed. Reg. 35,735 (1991) ...........................................................3

**RULES:**

Federal Rule of Appellate Procedure 29(a) ............................................1

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

No. 16-15576–EE

TIMOTHY ANDREWS,

Plaintiff-Appellant

v.

CITY OF HARTFORD, ALABAMA,

Defendant-Appellee

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
_____

BRIEF FOR THE UNITED STATES AND THE EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION AS *AMICI CURIAE* IN SUPPORT OF
PLAINTIFF-APPELLANT AND URGING REVERSAL
_____

## INTEREST OF THE UNITED STATES AND
## THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

The United States and the Equal Employment Opportunity Commission

(EEOC) file this brief under Federal Rule of Appellate Procedure 29(a).

This appeal concerns the interpretation of the term "disability" under the

Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12101 *et seq.*, as

amended by the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325,

122 Stat. 3553, and its implementing regulations, as applied in employment

discrimination claims under Title I of the ADA. The United States and the EEOC,

which share enforcement and rulemaking authority under the ADA, see 42 U.S.C.

12116, 12117(a), 12134(a), 12186(b), 12188(b), have an interest in the proper

resolution of the legal issues raised in this appeal.

## ISSUE PRESENTED

The United States and the EEOC address the following issue:

Whether plaintiff's allegations that he has diabetes and uses an insulin pump

are sufficient to plead that he has a "disability" as defined by the ADA.

## STATEMENT OF THE CASE

*1.    Statutory And Regulatory Background*

a. Congress enacted the ADA to establish a "comprehensive national

mandate for the elimination of discrimination against individuals with disabilities."

42 U.S.C. 12101(b)(1). As originally enacted, the ADA defined "disability" to

mean, with respect to an individual:

> (A) a physical or mental impairment that substantially limits one or
> more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment

ADA, Pub. L. No. 101-336, § 3, 104 Stat. 329-330 (1990) (current version at 42

U.S.C. 12102(1)). These subsections are commonly referred to as the "actual

disability" prong (Section 12102(1)(A)), the "record of" prong (Section

12102(1)(B)), and the "regarded as" prong (Section 12102(1)(C)). 29 C.F.R.

- 3 -

1630.2(g)(2).  While the ADA was silent as to the definition of "[m]ajor life activities," the EEOC's implementing regulations interpreted the phrase to mean "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  56 Fed. Reg. 35,735 (1991).[1]

b.  Decisions of the Supreme Court interpreted the definition of "disability" narrowly.  See, *e.g.*, *Toyota Motor Mfg., Ky., Inc.* v. *Williams*, 534 U.S. 184, 196-197 (2002) (holding that the terms "substantially" and "major" "need to be interpreted strictly to create a demanding standard for qualifying as disabled"); *Sutton* v. *United Air Lines, Inc.*, 527 U.S. 471, 491-492 (1999) (holding, *inter alia*, that to be "substantially limited" in the major life activity of "working," plaintiffs must allege, at a minimum, that they are unable to work in a broad class of jobs).  As a result, in 2008, Congress passed the ADAAA "[t]o restore the intent and protections" of the ADA.  Pub. L. No. 110-325, 122 Stat. 3553.

In enacting the ADAAA, Congress explained that when it passed the original statute, it had "expected that the definition of disability under the ADA would be interpreted consistently with how courts had applied the definition of a

---

[1]  The definition of "disability" in the ADA, 42 U.S.C. 12102(1), applies to claims arising under Title I (employment), Title II (public entities), and Title III (public accommodations) of the ADA.  The EEOC issues regulations implementing Title I of the ADA.

- 4 -

handicapped individual under the Rehabilitation Act of 1973." Pub. L. No. 110-325, § 2, 122 Stat. 3553.  That expectation, however, had "not been fulfilled" by the courts. *Ibid.*  Congress observed that the holdings of the Supreme Court in *Sutton* and its companion cases had "narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect." *Ibid.*  As a result, "lower courts ha[d] incorrectly found  *  *  *  that people with a range of substantially limiting impairments are not people with disabilities." *Ibid.*  "[I]n particular," Congress explained, the Supreme Court in *Toyota Motor* "interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress." *Ibid.*  Congress therefore passed the ADAAA to reject the standards enunciated in *Sutton* and *Toyota Motor* and to ensure "a broad scope of protection" under the ADA.  § 2(b)(1), 122 Stat. 3554.

The amendments leave the text of Section 12102(1) essentially unaltered, but add several clarifying provisions, including a definition of "[m]ajor life activities." 42 U.S.C. 12102(2).  This definition provides:

(A) In general

For purposes of [Section 12102(1)], major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

(B) Major bodily functions

For purposes of [Section 12102(1)], a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

42 U.S.C. 12102(2).

Congress further explained that the term "substantially limits," as used in Section 12102(1), "shall be interpreted consistently with the findings and purposes" of the ADAAA. Pub. L. No. 110-325, § 3, 122 Stat. 3555. These findings and purposes explicitly rejected the Supreme Court's view that the term "substantially limits" should be "interpreted strictly to create a demanding standard for qualifying as disabled," such that the impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." § 2, 122 Stat. 3554 (rejecting the standard articulated in *Toyota Motor*).

Finally, Congress relaxed the standard for proving that a plaintiff is "regarded as" having a covered impairment. Under the ADAAA, a plaintiff must show only that "he or she has been subjected to an action prohibited by this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*." 42 U.S.C. 12102(3)(A) (emphasis added). Congress also explained that these coverage

- 6 -

provisions are to be "construed in favor of broad coverage ∗ ∗ ∗ to the maximum extent permitted by the terms of this chapter."  42 U.S.C. 12102(4)(A).

c.  In 2011, as required by Congress, the EEOC issued revised regulations to implement the equal employment provisions of Title I of the ADA, as amended by the ADAAA.  29 C.F.R. 1630 *et seq.*; Pub. L. No. 110-325, § 2(b)(6), 122 Stat. 3554.  In defining "disability," the regulations clarify that an individual may establish ADA coverage "under any one or more" of the three prongs of Section 12102(1).  29 C.F.R. 1630.2(g)(2).

The regulations provide that the term "'substantially limits' shall be construed broadly in favor of expansive coverage," and that this standard "is not meant to be a demanding" one.  29 C.F.R. 1630.2(j)(1)(i).  The regulations also make clear that the term "'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA."  29 C.F.R. 1630.2(j)(1)(iv).

Determining whether an impairment substantially limits a major life activity requires an individualized assessment.  29 C.F.R. 1630.2(j)(1)(iv).  The EEOC regulations clarify, however, that the individualized assessment of some types of impairments "will, in virtually all cases, result in a determination of coverage" under the "actual disability" or "record of" prongs of Section 12102(1).  29 C.F.R. 1630.2(j)(3)(ii).  The regulations explain that "[g]iven their inherent nature, these

types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity.  Therefore, with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward." *Ibid.*  As relevant here, diabetes is listed among these impairments.  The regulations provide that "it should easily be concluded" that diabetes substantially limits, at a minimum, the major life activity of endocrine function.  29 C.F.R. 1630.2(j)(3)(iii).

With respect to the "record of" prong, the EEOC regulations clarify that "[a]n individual will be considered to have a record of a disability if the individual has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population."  29 C.F.R. 1630.2(k)(2).  In determining whether an impairment "substantially limits" a major life activity for purposes of the "record of" prong, the same principles articulated in 29 C.F.R. 1630.2(j) apply.  *Ibid.*

Finally, the regulations address the ADAAA's amendments to the "regarded as" prong.  Under the revised regulations, an individual is "'regarded as having [a disabling] impairment' if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity."  29 C.F.R. 1630.2(*l*)(1).  An individual is "regarded as having such an

- 8 -

impairment" any time a covered entity, such as an employer, "takes a prohibited

action against the individual because of an actual or perceived impairment."  29

C.F.R. 1630.2(*l*)(2).

2.    *Facts And Procedural History*

a.  Plaintiff Timothy Andrews has diabetes, which was diagnosed 30 years

ago.  Doc. 1, at 2.  He relies on an insulin pump.  Doc. 1, at 2.  Andrews worked as

a paramedic for defendant City of Hartford, Alabama (the City), from 2009 until

his termination in February 2015.  Doc. 1, at 2.  Between January and February

2015, Andrews requested sensitivity training for his coworkers and intervention to

stop harassment and bullying about his insulin pump.  Doc. 1, at 2, 4.  The City did

not act to provide training or prevent harassment and terminated Andrews soon

after he made his request, citing poor job performance.  Doc. 1, at 2-3.

In May 2015, Andrews filed a charge with the EEOC alleging that he had

been terminated because of his disability.  Doc.1, at 4.  After an inconclusive

investigation, the EEOC issued a Notice of Right to Sue (Doc. 1-1) and Andrews

filed his complaint in the United States District Court for the Middle District of

Alabama.  As relevant here, Andrews alleges that he has a "documented

disability," *i.e.*, diabetes, which had been diagnosed 30 years earlier.  Doc. 1, at 2.

Andrews also alleges that he had "performed his duties successfully" and "without

any adverse incident until the events leading to [his] termination."  Doc. 1, at 2.

- 9 -

He alleges that the City failed to provide his requested accommodation and retaliated against him because of that request. Doc. 1, at 2, 4. Andrews further alleges that he had maintained an "excellent" employment record and that the City's proffered justification for his termination—poor job performance—was pretext for discrimination on the basis of disability. Doc. 1, at 3. Andrews brought claims under the ADA for intentional discrimination, failure to accommodate, and retaliation. Doc. 1, at 5-6.

b. The City filed a motion to dismiss (Doc. 12), advancing three arguments: (1) Andrews did "not plausibly demonstrate" that he "has a disability within the meaning of the ADA" under any of the three coverage prongs of Section 12102(1); (2) under *Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009), Andrews failed to state a plausible claim of discrimination for which relief could be granted; and (3) Andrews failed to properly exhaust his administrative remedies as to his failure-to-accommodate and retaliation claims.[2]

On the disability coverage question, the City's arguments rested on the narrower, pre-ADAAA definition of "disability"; the City did not discuss or cite the ADAAA. First, the City argued that Andrews did not "plausibly demonstrate" that his diabetes "limited or restricted his ability to perform major life activities"

---

[2] The district court did not reach the second argument, and Andrews does not appeal the district court's ruling on the third argument. The government therefore does not address those issues here.

under Section 12102(1)(A), and therefore that he did not have a disability for purposes of the ADA. Doc. 12, at 10. Second, the City contended that Andrews failed to satisfy the "record of" prong, Section 12102(1)(B), because the "record-of-impairment standard is satisfied only if [the employee] actually suffered a physical impairment that substantially limited one or more of [his] major life activities." Doc. 12, at 10-11 (brackets in original) (quoting *Hilburn* v. *Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999)). Finally, the City argued that the complaint failed to demonstrate that Andrews was "regarded as" having an impairment under Section 12102(1)(C). The City contended that to qualify as having a disability under this prong, Andrews needed to show that the City "believed that [he] suffered from" an impairment that "substantially impaired" his ability to work. Doc. 12, at 11 (quoting *Kotwica* v. *Rose Packing Co.*, 637 F.3d 744, 749 (7th Cir. 2011)). The City argued that because the complaint did not contain allegations that "plausibly demonstrate that anyone at the City of Hartford regarded Plaintiff as having an impairment that 'was serious enough to affect'" his ability to perform his job, Andrews failed to state a "regarded as" disability. Doc. 12, at 11.

c. In response, Andrews filed an "Objection to Defendant's Motions to Dismiss" (Doc. 15) and a separate brief in support thereof (Doc. 17). Andrews asserted that he is "admittedly an insulin-dependent diabetic" and that his disability

- 11 -

was known to his employer.  Doc. 17, at 17.  Andrews also alleged new facts,

including that his diabetes substantially affects "more than one of his life activities,

to wit walking, talking, breathing, eating, sleeping, thinking, [and] learning."  Doc.

17, at 17-18.  Like the City, Andrews did not cite or address the relevant ADAAA

amendments.

d.  On August 3, 2016, the district court issued a memorandum opinion

granting the City's motion to dismiss and dismissing all of Andrews's claims with

prejudice.  Doc. 20.  As relevant here, the court concluded that Andrews failed to

adequately allege that he had a covered "disability" under any of the three prongs

of Section 12102(1).  Like the parties, the court did not address the definition of

"disability" as amended by the ADAAA.

First, the court stated that Andrews failed to allege that his diabetes,

although an impairment, substantially limited one or more of his major life

activities.  Doc. 20, at 4.  Acknowledging Andrews's assertion that his diabetes

forces him to "undress, tend to his pump, and bring in and store special diet foods

in the community fridge," the court concluded that these factors "did not suggest"

that Andrews was "significantly restricted" in any major life activity.  Doc. 20, at

4-5 (citing pre-ADAAA case law, *Collado* v. *United Parcel Serv., Co.*, 419 F.3d

1143, 1156 (11th Cir. 2005)).  The court added that "[g]iven the strenuous nature

of [Andrews's] former employment, the Court cannot conclude that Plaintiff

- 12 -

demonstrates, or can demonstrate, that he is substantially limited in any major life activity." Doc. 20, at 5. The court did not acknowledge the ADAAA's addition of major bodily functions, including endocrine function, as major life activities. Nor did the district court consider the implementing regulation providing that diabetes, given its "inherent nature," will "virtually always be found to impose a substantial limitation" on the major life activity of endocrine function. 29 C.F.R. 1630.2(j)(3)(ii).

The court also concluded that Andrews failed to sufficiently allege that he had a covered disability under the "record of" prong. Doc. 20, at 5. The court stated that under this prong a plaintiff must "adduce[] evidence of a record relied on by an employer that indicates that the individual has or has had a substantially limiting impairment." Doc. 20, at 5 (citing Section 12102(1)(B); *Hilburn*, 181 F.3d at 1229). The district court summarily concluded that Andrews had "failed to adduce any evidence of a record of impairment." Doc. 20, at 5.

Finally, the district court held that Andrews failed to plead a covered disability under the "regarded as" prong. Doc. 20, at 5. "As with real impairments," the district court stated, "courts have held that a perceived impairment must be substantially limiting and significant." Doc. 20, at 6 (quoting *Gordon* v. *E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 913 (11th Cir. 1996)). The district court concluded that Andrews had failed to meet this standard, and,

accordingly, that "Plaintiff's diabetes does not qualify as a disability under the

ADA." Doc. 20, at 6.[3]

e. On August 19, 2016, Andrews filed a timely notice of appeal. Doc. 22.

## SUMMARY OF ARGUMENT

Andrews's complaint sufficiently alleges that he has a disability under the

ADA, as amended by the ADAAA. In holding that Andrews failed to demonstrate

that he is a qualified individual with a disability, the district court applied an

incorrect definition of "disability" that ignores the ADAAA. Under the ADAAA

and its implementing regulations, Andrews sufficiently alleges that he has a

disability under each of the three definitional prongs of Section 12012(1). In

particular, by alleging that he has diabetes, Andrews adequately pleads an actual

disability under Section 12012(1)(A), since diabetes is a physical impairment that

"virtually always" substantially limits the major life activity of endocrine function.

See 29 C.F.R. 1630.2(j)(3)(ii). Andrews's allegations are also sufficient to plead a

"record of" disability and a "regarded as" disability under Sections 12102(1)(B)

and 12102(1)(C), respectively. Therefore, this Court should reverse and remand

_____

[3] The court also dismissed Andrews's failure-to-accommodate and
retaliation claims, concluding that he had failed to exhaust his administrative
remedies. Doc. 20, at 6, 9-10. Andrews does not appeal these conclusions.
Appellant's Br. 7 n.2.

- 14 -

the case for the district court to consider Andrews's disability discrimination claim under the correct legal standards.

**ARGUMENT**

**ANDREWS'S COMPLAINT ADEQUATELY PLEADS A COVERED DISABILITY UNDER EACH OF THE THREE PRONGS OF SECTION 12102(1), AS AMENDED BY THE ADA AMENDMENTS ACT OF 2008**

Andrew's complaint sufficiently alleges that he has a disability under the ADA, as amended by the ADAAA.  In holding otherwise, the district court applied an incorrect definition of "disability" that ignores the ADAAA.  Because the critical events in this case took place after the ADAAA went into effect, the district court should have applied the post-ADAAA version of the ADA.  See *Mazzeo* v. *Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1267 (11th Cir. 2014).  Under the ADAAA and implementing regulations, Andrews sufficiently alleges that he has a disability under each of the three definitional prongs of Section 12102(1).[4]

A.    *Andrews's Complaint Adequately Pleads An Actual Disability Under Section 12102(1)(A)*

1.  As outlined above, Section 12102(1)(A) provides that a "'disability' means, with respect to an individual – * * * a physical or mental impairment that

---

[4]  Andrews has not waived his ADAAA argument by not raising it below. "When an issue or claim is properly before [a] court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

substantially limits one or more major life activities of such individual."  42 U.S.C.

12102(1)(A).  In *Toyota Motor Manufacturing, Kentucky, Inc.* v. *Williams*, the

Supreme Court interpreted this language "strictly to create a demanding standard

for qualifying as disabled."  534 U.S. 184, 197 (2002).  The Court determined that

for an impairment to substantially limit a major life activity, it must "prevent[] or

severely restrict[] the individual from doing activities that are of central importance

to most people's daily lives."  *Id.* at 198.  The ADAAA expressly overturned that

interpretation, explaining that *Toyota Motor* had incorrectly interpreted the term

"substantially limits" to require a greater degree of limitation than was intended by

Congress.  Pub. L. No. 110-325, § 2(a)(7), 122 Stat. 3553; see also *Mazzeo*, 746

F.3d at 1269 (discussing the ADAAA's rejection of *Toyota Motor*).

In the ADAAA, Congress explained, the definition of disability "shall be

construed in favor of broad coverage" and "to the maximum extent permitted by

the terms of this Act."  § 3(4)(A), 122 Stat. 3555; *Jordan* v. *City of Union City*,

646 F. App'x 736, 739 & n.4 (11th Cir. 2016) ("[c]onstruing the ADA broadly"

under the ADAAA).  In that vein, the term "substantially limits" shall be

interpreted "consistently with the findings and purposes of the [ADAAA]," 42

U.S.C. 12102(4)(B), which make clear that the "primary object of attention" in

ADA cases should be whether the covered entity has "complied with their

obligations," and that the question whether an individual's impairment is a

- 16 -

disability under the ADA "should not demand extensive analysis."  Pub. L. No.

110-325, § 2(b)(5), 122 Stat. 3554.  As the EEOC emphasized in its implementing

regulations, the phrase "substantially limits" is to be "construed broadly in favor of

expansive coverage" and is "not meant to be a demanding standard."  29 C.F.R.

1630.2(j)(1)(i); *Mazzeo*, 746 F.3d at 1269.

Congress amended the ADA to define "major life activities" to include a

category of "[m]ajor bodily functions."  42 U.S.C. 12102(2).  As relevant here,

Congress specified that "major bodily function[s]" include endocrine function.  42

U.S.C. 12102(2)(B).  The EEOC's implementing regulations state that diabetes,

given its "inherent nature," will "virtually always be found to impose a substantial

limitation" on the major life activity of endocrine function.  29 C.F.R.

1630.2(j)(3)(ii)-(iii).

2.  In holding that Andrews failed to allege an "actual disability," the district

court relied on superseded ADA case law rather than the ADAAA's clarification of

the governing legal standards and its significant expansion of disability coverage

under the ADA.  As a result, the district court made two distinct errors under this

prong:  (i) it overlooked the ADAAA's addition of "major bodily functions,"

including endocrine function, as protected major life activities; and (ii) it applied

an invalid and overly restrictive definition of the term "substantially limits."

- 17 -

First, in considering whether Andrews's diabetes substantially limits any "major life activities," the district court failed to acknowledge the ADAAA's addition of "major bodily functions," including endocrine function, as covered major life activities.  See Doc. 20, at 4.  Had the district court properly applied the ADAAA, it likely would have concluded that Andrews's diabetes constitutes a protected disability because it substantially limits his endocrine function.  That is because the factual allegations that he has had diabetes for 30 years and "reli[es] on a diabetic pump" are sufficient to survive a motion to dismiss on this issue. Doc. 1, at 2.

Diabetes falls squarely into the EEOC's category of "[p]redictable assessments" for which the necessary individualized assessment "should be particularly simple and straightforward."  29 C.F.R. 1630.2(j)(3)(ii).  As the regulations make clear, "it should easily be concluded" that diabetes "will, at a minimum," substantially limit the major life activity of endocrine function. 29 C.F.R. 1630.2(j)(3)(iii).  Case law supports this conclusion.  See, *e.g.*, *Tadder* v. *Board of Regents of the Univ. of Wis. Sys.*, 15 F. Supp. 3d 868, 884 n.9 (W.D. Wis. 2014) (noting that the ADAAA's inclusion of endocrine function as a major life activity "would appear to generally establish diabetes as an impairment imposing a substantial limitation on a major life activity"); *Willoughby* v. *Connecticut Container Corp.*, No. 3:11-CV-00992 (CSH), 2013 WL 6198210, at *9 (D. Conn.

- 18 -

Nov. 27, 2013) ("Plaintiff—who suffers these symptoms due to diabetes, which is by definition a disease which impacts the functioning of the endocrine system— could indeed easily be found by a jury to be an individual who has 'a physical impairment that substantially limits one or more major life activities of such individual' and, accordingly, has a disability under the ADA") (emphasis and citation omitted); *Ray* v. *North Am. Stainless, Inc.*, No. 13-46-GFVT, 2014 WL 1047120, at *4 (E.D. Ky. Mar. 18, 2014) (denying defendant's motion to dismiss where plaintiff alleged that his insulin-dependent diabetes was an impairment that substantially limited endocrine function, and rejecting defendant's argument that plaintiff needed to allege limitations in other major life activities).

In sum, in light of the ADAAA's addition of endocrine function as a major life activity and the EEOC's accompanying regulations, Andrews's allegations that he has diabetes and relies on an insulin pump, taken as true, plausibly establish that he has a physical impairment that substantially limits a major life activity, and therefore that he has a disability for purposes of the ADA.  The district court erred in failing to consider Andrews's allegations in the context of now-applicable ADAAA legal standards.

Second, compounding its mistake, the district court erred by applying an overly restrictive pre-ADAAA interpretation of the term "substantially limits." See Doc. 20, at 5.  The district court, relying on pre-ADAAA Eleventh Circuit case

- 19 -

law, concluded that Andrews failed to show how he was "significantly restricted" in any major life activity as compared to the average person.  Doc. 20, at 5 (quoting *Collado* v. *United Parcel Serv., Co.*, 419 F.3d 1143, 1156 (11th Cir. 2005)).  But that is the wrong legal standard for determining whether an impairment is "substantially limit[ing]."  Pursuant to the ADAAA, courts must construe the term "substantially limits" "broadly in favor of expansive coverage." 29 C.F.R. 1630.2(j)(1)(i); 42 U.S.C. 12102(4)(B).  This standard "is not meant to be a demanding" one, and "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  29 C.F.R. 1630.2(j)(1)(i)-(ii).  This Court has recognized that "Congress intended 'that the establishment of coverage under the ADA should not be overly complex nor difficult, and expect[ed] that the [ADAAA] will lessen the standard of establishing whether an individual has a disability for purposes of coverage under the ADA.'"  *Mazzeo*, 746 F.3d at 1268 & n.2 (brackets in original; citation omitted).  Indeed, Congress specifically rejected *Toyota Motor*'s requirement that to be substantially limited in performing a major life activity under the ADA, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  Pub. L. No. 110-325, § 2(b)(4), 122 Stat. 3554 (abrogating *Toyota Motor*).  Accordingly, the district court erred by requiring

- 20 -

Andrews to plead that his impairment "significantly restricted" a major life activity.

B.    *Andrews's Complaint Adequately Pleads A "Record Of" Disability Under Section 12102(1)(B)*

As noted above, Section 12102(1)(B) defines "disability" to include having a "record of" an impairment that constitutes a disability under Section 12102(1)(A). The EEOC regulations make clear that whether an individual has a record of such an impairment "shall be construed broadly to the maximum extent permitted by the ADA and should not demand extensive analysis." 29 C.F.R. 1630.2(k)(2). An individual is "considered to have a record of a disability if the individual has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population." *Ibid.*

The district court erred in holding that Andrews did not adequately plead a "record of" disability because he "failed to adduce any evidence of a record of impairment." Doc. 20, at 5. Of course, at the motion to dismiss stage, Andrews need not have "adduce[d] any evidence" at all of his record of impairment. Doc. 20, at 5. Rather, "[to] survive a motion to dismiss," Andrews's complaint need only have contained "sufficient factual matter, accepted as true, to 'state a claim to relief that [was] plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). Andrews's complaint does this by alleging that he was "diagnosed with diabetes

thirty years ago," that his diabetes is "documented," and that he is "reliant on a

diabetic pump."  Doc. 1, at 2.  These factual allegations necessarily imply the

existence of medical records documenting Andrews's substantially limiting

impairment.  Moreover, even absent a specific mention of those medical records,

under the flexible standards outlined above, the factual allegations in the complaint

adequately state "a history of" diabetes, which qualifies Andrews for coverage

under the "record of" prong pursuant to 29 C.F.R. 1630.2(k)(2), *supra*.  Therefore,

the district court erred in concluding that Andrews failed to plausibly show that he

has a disability under the "record of" prong.

C.    *Andrews's Complaint Adequately Pleads A "Regarded As" Disability Under Section 12102(1)(C)*

Finally, Section 12102(1)(C) defines "disability" to include "being regarded

as having" an impairment that constitutes a disability under Section 12102(1)(A).

42 U.S.C. 12102(1)(C).  Under the ADAAA, an individual meets this requirement

"if the individual establishes that he or she has been subjected to an action

prohibited [by the ADA] because of an actual or perceived physical or mental

impairment *whether or not the impairment limits or is perceived to limit a major*

*life activity*."  42 U.S.C. 12102(3)(A) (emphasis added); see also 29 C.F.R.

1630.2(*l*)(1).

The amended language eliminates from the "regarded as" analysis the

question whether the impairment substantially limits a major life activity.

- 22 -

Likewise, the employer's subjective perception of whether the impairment is substantially limiting is irrelevant to the "regarded as" inquiry. As this Court explained in *Wolfe* v. *Postmaster General*, "[b]ecause of" the amendment to Section 12102(1)(C), "a plaintiff need demonstrate only that the employer regarded him as being impaired, not that the employer believed the impairment prevented the plaintiff from performing a major life activity." 488 F. App'x 465, 468 (11th Cir. 2012). In short, coverage under the "regarded as" prong requires only two elements: that the individual (i) was subjected to an ADA-prohibited action (ii) because of an actual or perceived impairment.

Here again the district court applied an invalid standard to hold that Andrews failed to plead a "regarded as" disability. "As with real impairments," the district court stated, "courts have held that a perceived impairment must be substantially limiting and significant." Doc. 20, at 6 (citing *Gordon* v. *E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 913 (11th Cir. 1996)). The ADAAA explicitly provides, however, that an individual may be "regarded as" having a covered impairment "whether or not" the impairment actually limits, or the employer perceives it as limiting, a major life activity. 42 U.S.C. 12102(3)(A); see *Wolfe*, 488 F. App'x at 468; see also *Hilton* v. *Wright*, 673 F.3d 120, 129 (2d Cir. 2012) (plaintiff "not required to present evidence of how or to what degree [the

- 23 -

employer] believed the impairment affected him").  The district court missed this change in the law.

Under the correct legal standard, Andrews adequately alleges that he was "regarded as" having a disability under Section 12102(1)(C).  Specifically, Andrews alleges that he has diabetes, the City was aware of his diabetes, he requested reasonable accommodations from the City, the City refused to provide such accommodations, and the City terminated his employment for discriminatory reasons notwithstanding his "excellent" employment record.  Doc. 1, at 2-3. Taking these allegations as true, they are sufficient to state a "regarded as" disability because they allege that the City "regarded [Andrews] as being [impaired]," *Wolfe*, 488 F. App'x at 468, and subjected him to an ADA-prohibited action because of that impairment.

## CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing

Andrews's discrimination claim should be reversed.

Respectfully submitted,

VANITA GUPTA
  Principal Deputy Assistant
    Attorney General

| | |
|---|---|
| JAMES L. LEE | |
|   Deputy General Counsel | |
| JENNIFER S. GOLDSTEIN | |
|   Associate General Counsel | <u>s/ Alexander B. Aronson</u> |
| LORRAINE C. DAVIS | THOMAS E. CHANDLER |
|   Assistant General Counsel | ALEXANDER B. ARONSON |
| CHRISTINE J. BACK |   Attorneys |
|   Attorney |   Department of Justice |
|   Equal Employment |   Civil Rights Division |
|     Opportunity Commission |   Appellate Section - RFK 3730 |
|   Office of General Counsel |   Ben Franklin Station |
|   131 M Street NE, Fifth Floor |   P.O. Box 14403 |
|   Washington, D.C.  20507 |   Washington, D.C.  20044-4403 |
|   (202) 663-4733 |   (202) 514-0619 |

## CERTIFICATE OF COMPLIANCE

**1.  Type-Volume**

This document complies with the word limit of Federal Rule of Appellate

Procedure 32(a)(7) and Federal Rule of Appellate Procedure 29(d) because,

excluding the parts of the document exempted by Federal Rule of Appellate

Procedure 32(f), this document contains 4952 words.

**2.  Type Face and Type-Style**

This document complies with the type face requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of

Appellate Procedure 32(a)(6).

s/ Alexander B. Aronson
ALEXANDER B. ARONSON
Attorney for the United States

Date:  December 12, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2016, I electronically filed the foregoing BRIEF FOR THE UNITED STATES AND THE EQAUL EMPLOYMENT OPPORTUNITY COMMISSION AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFF-APPELLANT AND URGING REVERSAL with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I further certify that on December 12, 2016, seven paper copies of the same were sent via U.S. certified mail, postage prepaid, to the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit.

s/ Alexander B. Aronson
ALEXANDER B. ARONSON
 Attorney